UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| STEVE E. STERLING | CIVIL ACTION NO. 06-1868 |
| VS. | JUDGE DOHERTY |
| COMMISSIONER SOCIAL SECURITY ADMINISTRATION | MAGISTRATE JUDGE METHVIN |

*REPORT AND RECOMMENDATION*

Before the court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be **AFFIRMED**.

*Background*

Born on June 14, 1970, Steve E. Sterling ("Sterling") is currently 37 years old.  Sterling has a fifth grade education and has worked in the past as a rigger and forklift operator.[1]

Sterling previously received disability benefits from 1996 through 2000.  Thereafter, he worked as a rigger from 2001 until being laid off in August 2004.  On September 23, 2004, Sterling again applied for disability benefits and supplemental security income, alleging disability since August 16, 2004, due to chronic lateral ligamentous instability in both ankles.[2]  Sterling's application was denied initially and on reconsideration, and after an administrative hearing, the ALJ issued an unfavorable decision.  Sterling appealed the decision to the Appeals Council, which denied review and Sterling timely filed this appeal.

---

[1] Tr. 55.

[2] Tr. 45-49, 55.

*Assignment of Errors*

Sterling alleges the following errors: 1) the jobs listed by the ALJ that Sterling can perform do not exist in significant numbers in Louisiana;  2) the vocational expert and the ALJ failed to list corresponding entries in the Dictionary of Occupational Titles ("DOT") for the jobs; 3) the ALJ gave an inaccurate hypothetical to the vocational expert; and 4) the ALJ erred in failing to obtain a consultative examination.

*Standard of Review and the Commissioner's Findings*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards.  Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991).  The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion.  Carey, 230 F.3d at 136; Johnson v. Bowen , 864 F.2d 340, 343 (5th Cir.1988).  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision.  Johnson, 864 F.2d at 343.

In determining whether a claimant is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f) (1992):

1. If a person is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings.

3

2. A person who does not have a "severe impairment" will not be found to be disabled.

3. A person who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4. If a person can still perform his past work, he is not disabled.

5. If a person's impairment prevents him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

In the instant case, the ALJ determined that Sterling suffered from the following severe impairments: degenerative disease of the left ankle and status post multiple surgeries to the right ankle.[3] At Step 5, the ALJ found that Sterling could perform sedentary work with limitations. Relying on the testimony of a vocational expert, the ALJ found that there were jobs existing in significant numbers which Sterling could perform, and therefore he was not disabled.

*Administrative Record*

*Ankles*: On September 8, 2004, Sterling was examined by Dr. Jeffrey C. Fitter, an orthopedist.[4] Sterling gave a history of previous surgical treatment on his right ankle and having clubfoot as a baby. Sterling complained of left ankle pain. Physical examination showed that Sterling was tender on the left ankle primarily anterolateral with "just mild restriction of motion."[5] X-rays showed mild degnerative disease throughout. Dr. Fitter diagnosed Sterling with degnerative disease in his left ankle. Dr. Fitter recommended that Sterling undergo arthroscopic debridement for

---

[3] Tr. 22.

[4] Tr. 108.

[5] Tr. 108.

4

temporary relief.  The surgery was not performed.  On November 2, 2004, Dr. Fitter noted that Sterling will not be able to return to work even with successful surgery.[6]

***Residual functional capacity assessment***: On October 25, 2004, a DDS physician, Vivian McKinney completed a physical residual functional capacity ("RFC") assessement, finding that Sterling could occasionally lift 10 pounds, frequently lift less than 10 pounds, stand and/or walk at least two hours in an 8-hour workday, and sit six hours in a workday.[7]  Sterling's RFC limited him to occasional climbing, balancing, stooping, kneeling, crouching, and crawling.

***Left arm pain***: On April 7, 2006, Sterling was examined at University Medical Center ("UMC") for left arm pain and numbness that lasted two weeks.  Sterling had a slow heartbeat, and non-specific t-wave changes on the EKG.[8]  X-rays of the left shoulder showed no fracture, and the cervical spine showed mild cervical spondylosis at C5- and C6.[9]

***Administrative testimony***: Sterling testified that his biggest problem is that he cannot stand or walk for longer than 5-10 minutes.[10]  Sterling uses a cane, although it was not prescribed by a doctor.  He testified that he had recently begun having numbness that starts in his neck and radiates down into his left arm.[11]  The medication that Sterling takes upsets his stomach and makes him tired.[12]

---

[6] Tr. 107.

[7] Tr. 99-106, Tr. 2 ("completed by a DDS physician.")

[8] Tr. 122.

[9] Tr. 118 and 121.

[10] Tr. 133-135.

[11] Tr. 136-137.

[12] Tr. 137-138.

5

## *Findings and Conclusions*

**Vocational expert testimony**

Sterling argues that the ALJ erred in relying on the vocational expert's testimony in determining that Sterling was not disabled.  Sterling raises three issues with the testimony: 1) that the vocational expert did not identify jobs that exist in significant numbers in Louisiana; 2) that the vocational expert did not provide DOT information for the jobs; and 3) that the expert's testimony was in response to an inaccurate hypothetical.

Relevant portions of the transcript show the following colloquy between the ALJ and the vocational expert, Beth Drury:

> Q. He's 35, he'll be 36 next month, he's 35, in less than a month he'll be 36 but he's 35, he has a fifth grade education.  According to his statement it was regular and then he went on into Job Corps but he never got a GED or anything further beyond that.  His past work more specifically delineated Exhibits 1E, 3E and as he testified here to this date.  I'm going to impose a requirement that, I know he did indicate in his disability report he does drive some but I'm going to impose a requirement that he should not use foot pedals or, as a condition of employment and I'm going to restrict him to a maximum lift and carry of ten pounds occasionally and frequently.  I'm going to restrict him from any balancing activities, no climbing of ladders, ropes and scaffolds, no work at unprotected heights around dangerous moving machinery.  For this hypothetical he could stand and walk only two hours of an eight hour day and sit primarily six of eight giving him an opportunity to change positions but primarily sitting and for this hypothetical he'd be capable of understanding, remembering and carrying out detail but not highly complex decision making activities.  He could, for this hypothetical, attend and concentrate for extended periods and deal appropriately with workplace peers, bosses, occasional routine work changes.  Also based on what he has noted in his Exhibit 4E he has indicated that he can pay bills, count change, handle a savings account and use a checkbook and obtain money orders.  And within the confines of that, my first hypothetical, I ask you, you already said he couldn't do his past relevant work, and so my question is there any type of work he could perform within the confines of this hypothetical?
>
> A. Yes, Your Honor.
>
> Q. And what type of work would that be?

6

A. He could work as production worker, Your Honor. Strength level would be sedentary, Your Honor. For Louisiana, sedentary, 626; United States, 61,946. Inspector, Louisiana 138; United States 15,309. And general office clerk, Louisiana sedentary 802; United States, 65,584.

Q. Give me one more sample of this.

A. Packaging or filling machine tender, Louisiana 26; United States 3, 377.

\*\*\*

Q. But these are samples of work that would allow him – and even if you were to add occasional cane use, not prescribed but occasional cane use, can those jobs still be performed with occasional cane?

A. Well, the work of production, Your Honor, I would probably say no, Your Honor, we'd have to delete that, Your Honor.

Q. Okay.

A. General office clerk would probably still be fine.

Q. Uh-huh.

A. Inspector would still be fine.

Q. Okay.

A. I would also have to take out the packaging and filling machine operator and tender with the use of a cane as well.[13]

*Availability of "significant numbers" of jobs*

Sterling complains that some of the jobs identified by the vocational expert did not exist in significant numbers in Louisiana. However, 42 U.S.C. § 423(d)(2)(A) requires only that the identified jobs exist "in the national economy." Here, the vocational expert identified specific jobs which exist in significant numbers in the national economy: production worker – 61,946; general office clerk – 65,584; inspector – 15,309; and packaging or filling machine tender – 3,377.

---

[13] Tr. 139-143.

Thus, it is clear that the vocational expert identified jobs that exists in significant numbers in the national economy. The ALJ did not err in relying on the experts' testimony.

### *DOT information*

Sterling argues that the ALJ erred in relying on the vocational expert's testimony because the expert did not provide specific information, particularly DOT identification numbers, for the jobs that Sterling can perform.   Sterling also argues that the jobs identified conflict with the DOT information.

The ALJ may rely on either the DOT or a vocational expert in determining whether claimants can make adjustments to other work. *See* 20 C.F.R. § 404.1566(d), (e).  One reason for the reliance on the vocational expert rather than the DOT, "is that the DOT provides only standardized job information, whereas a vocational expert's testimony is tailored to address a particular claimant's vocational profile and impairments, as provided in an administrative law judge's hypothetical question."  Romine v. Barnhart, 454 F.Supp.2d 623, 626 -627 (E.D.Tex. 2006).

The Fifth Circuit has ruled that a conflict between the vocational expert's testimony and the DOT does not invalidate the expert's testimony:

> To the extent that there is any implied or indirect conflict between the vocational expert's testimony and the DOT in this case, we agree with the majority of the circuits that the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so.  As the facts of this case demonstrate, all kinds of implicit conflicts are possible and the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation.  Moreover, claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing.

Carey v. Apfel,  230 F.3d 131, 146 -147 (5th Cir. 2000).  Thus, when a conflict does arise, the claimant should address the conflict at the administrative hearing.

8

Here, the ALJ reviewed the vocational expert's testimony and noted, "Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles."[14]   The vocational expert testified that all of the jobs were at the sedentary unskilled level.  When asked whether Sterling would be able to perform the work of surveillance monitor, the expert replied that he could not perform that job because he was limited to unskilled work.[15]  Likewise, the ALJ explained that if Sterling required the use of a cane, he would not be able to perform the physical demands, albeit sedentary, of packaging and filling machine operator and production.[16]  Thus, the expert was familiar with the requirements of the jobs for which she identified, as well as what limitations precluded the performance of those jobs.

Although Sterling takes issue with the lack of DOT information and the alleged conflict between the jobs and the DOT, it is clear that the expert adequately identified the jobs.  Moreover, the ALJ considered the testimony and found that there were no conflicts.  Additionally, Sterling did not address any discrepancies at the hearing, despite having a chance to cross-examine the expert.

Considering that the vocational expert identified jobs which Sterling can perform and the ALJ found this information consistent with the DOT, and because Sterling did not cross-examine the expert concerning any purported discrepancies in her testimony, the undersigned concludes that the ALJ did not err in relying on the testimony of the vocational expert.

---

[14] Tr. 25.

[15] Tr. 142.

[16] Tr. 143.

9

*Hypothetical posed to vocational expert*

Sterling argues that since the ALJ did not include information regarding his arm pain, side effects of medication, and use of a cane in the hypothetical posed to the vocational expert, there is no support for his decision that he could perform work that exists in the national economy.

In Bowling v. Shalala, 36 F.3d 431 (5th Cir.1994), the court stated:

> Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions ... a determination of non-disability based on such a defective question cannot stand.

I find that the hypothetical posed by the ALJ included the limitations posed by Sterling's impairments. Although Sterling maintains that the ALJ should have included the information regarding his arm pain, drowsiness, and usage of a cane, there is no medical support for the inclusion of these limitations. The medical information regarding Sterling's arm pain showed that mild cervical spondylosis, but there was no indication that this posed any work limitations. Likewise, although Sterling testified that his medications make him "a little sleepy,"[17] he did not indicate that this was severe or would in any way affect his ability to work. Furthermore, the ALJ questioned the expert regarding whether the use of a cane would preclude employment, and the expert testified that even with the cane, there were jobs which Sterling could perform. Thus, the ALJ's hypothetical was proper.

Accordingly, I find that the ALJ did not err in relying on the vocational expert's testimony in determining that Sterling was not disabled because he could perform work which exists in significant numbers in the national economy.

---

[17] Tr. 138.

10

**Failure to obtain consultative examination**

Sterling argues that the ALJ erred in failing to obtain a consultative examination "to help determine the true nature of Mr. Sterling's medical problems."[18]

An administrative law judge has a duty to fully and fairly develop the facts relative to a claim for disability benefits.  *See* Carey v. Apfel, 230 F.3d 131 (5th Cir. 2000); Brock v. Chater, 84 F.3d 726 (5th Cir.1996); Kane v. Heckler, 731 F.2d 1216 (5th Cir.1984).  The decision of an ALJ will be reversed for failure to fully and fairly develop the record if the claimant shows: 1) that the ALJ failed to fulfill his duty to adequately develop the record, and 2) the claimant was prejudiced thereby.  *See* Carey 230 F.3d 131; Brock, 84 F.3d at 728; Kane, 731 F.2d at 1220.  To establish prejudice, a claimant must demonstrate that he or she "could and would have adduced evidence that might have altered the result."  Kane, supra.

Additionally, the ALJ has the discretion to order a consultative examination.  Jones v. Bowen, 829 F.2d 524 (5th Cir. 1987).  An examination at government expense is not required "unless the record establishes that such an examination is necessary to enable the administrative law judge to make the disability decision."  Turner v. Califano, 563 F.2d 669 (5th Cir. 1977).

In the case at bar, Sterling fails to demonstrate that a consultative examination was required in order for the ALJ to make the disability determination.  The record contains medical records from Dr. Fitter and UMC, both of which discussed all of the impairments claimed by Sterling.  Although Dr. Fitter wrote a note stating that he did not think that Sterling could work, the note was not supported by an objective medical basis for the opinion, or information regarding the specific tasks

---

[18] Rec. Doc. 8.

11

which Sterling was incapable of performing.[19]  In fact, Dr. Fitter's record of examination indicates that Sterling had only a mild decrease in range of motion in his ankles.  Likewise, the records from UMC showed only mild spondylosis and did not note that this condition limited Sterling's ability to perform work related duties.  Additionally, the RFC Assessment completed by a non-examining DDS consultant established that Sterling was capable of performing only a limited range of sedentary work.  These records support the ALJ's RFC analysis.

The medical records, therefore, provided sufficient information regarding Sterling's condition.  Sterling has pointed to no evidence that would have been adduced that could have changed the result, but instead he argues that the point of the consultative examination would have been to determine "the true nature" of his condition.   Sterling's entire argument concerning the failure to develop the record is two paragraphs long and does not include any application or analysis of the law to the facts of this case.  The undersigned finds that the medical records contained in the administrative record adequately depict Sterling's impairments.  A consultative examination was not necessary.  Accordingly, the undersigned concludes that substantial evidence supports the ALJ's decision.

---

[19]  The ALJ is responsible for assessing the medical evidence and determining the claimant's residual functional capacity.  Perez v. Heckler,  777 F.2d 298, 302 (5th Cir. 1985).  Further, the ultimate issue of disability is reserved to the Commissioner.  Moore v. Sullivan, 919 F.2d 901, 905 (5th Cir. 1990).  "[T]he ALJ has sole responsibility for determining a claimant's disability status."  Martinez v. Chater, 64 F.3d 172, 175-176 (5th Cir. 1995), quoting, Moore v. Sullivan, 919 F.2d 901, 905 (5th Cir. 1990).  The ALJ is able to decrease reliance on treating physician testimony for good cause.  Leggett v. Chater, 67 F.3d 558, 566 (5th Cir. 1995).  "Good cause for abandoning the treating physician rule includes 'disregarding statements [by the treating physician] that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by evidence.'"  Id.

*Conclusion*

The undersigned finds that substantial evidence of record supports the ALJ's decision. Accordingly, it is **RECOMMENDED** that the Commissioner's decision be **AFFIRMED.**

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).**

Signed at Lafayette, Louisiana, on February 3, 2008.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)